**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**
Honorable Marcia S. Krieger

Civil Action No. 1:09-cv-02582-MSK-MEH

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PATRIC LEHOUILLIER, individually, and | ) |
| d/b/a LEHOUILLIER & ASSOCIATES, P.C., | ) |
| | ) |
| Defendant. | ) |

---

**CONSENT DECREE**

---

**I.  BACKGROUND**

**A.  Introduction**

1.  This Consent Decree is agreed to, by and among, Plaintiff United States of America, Defendant Patric J. LeHouillier ("LeHouillier" ), individually, and doing business as the professional corporation, LeHouillier & Associates, P.C. ("LeHouillier Firm").  For purposes of this Consent Decree, LeHouillier and the LeHouillier Firm are referred to collectively as "Defendant" and Plaintiff United States and Defendant are referred to collectively as the "Parties."

2.  This action was brought by the United States to enforce the provisions of title III of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12181 - 12189, and its implementing regulation, 28 C.F.R. pt. 36.  The United States' Complaint in this action alleges that disability discrimination in violation of title III of the ADA occurred when Defendant denied veterinarian Joan Murnane, her husband Col. (Retired) Thomas Rendall, and their attorney access to Defendant's law office located at 90 S. Cascade Avenue, Colorado Springs, Colorado because Dr. Murnane uses a service animal in conjunction with her disability.  The denial of access occurred when Dr. Murnane, Col. Rendall, and their attorney appeared at Defendant's law office for a deposition notwithstanding the fact that counsel for Dr. Murnane and Col. Rendall had advised Defendant one month before the incident that Dr. Murnane would be accompanied by her service animal, and had offered to hold the deposition two blocks from Defendant's law office, which offer Defendant had declined.

2a. Defendant denies any violation of the Americans with Disabilities Act.

3.  LeHouillier is a practicing attorney who is the principal of, and practices law through, the LeHouillier Firm. The Parties agree that the law office operated by Defendant is a place of public accommodation covered by title III of the ADA.  28 C.F.R. § 36.104.  The Parties also agree that, because Defendant operates that law office, Defendant is a public accommodation covered by title III of the ADA.  42 U.S.C. § 12181(7)(F); 28 C.F.R. § 36.104.

    **B.**    **Relevant Provisions of the Americans with Disabilities Act**

4. The ADA prohibits public accommodations, including those operating the professional offices of an attorney, from discriminating against an individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201.

5. The ADA requires public accommodations to make reasonable modifications in policies, practices, and procedures to permit the use of service animals by persons with disabilities in places of public accommodation. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a), (c).

6. The ADA also prohibits discrimination against an individual because of that individual's known relationship or association with an individual with a known disability. 42 U.S.C. § 12182(b)(1)(E); 28 C.F.R. § 36.205.

    **C.**    **Consent of the Parties to Entry of this Order**

7. The Parties agree that the Court has jurisdiction of this action pursuant to 42 U.S.C. § 12188(b)(1)(B) and 28 U.S.C. §§ 1331 and 1345. The Parties further agree that the controversy should be resolved without further proceedings and without an evidentiary hearing.

8. As indicated by the signatures appearing below, the Parties agree to entry of this Consent Decree.

**It is hereby ADJUDGED, ORDERED and DECREED:**

**GENERAL NONDISCRIMINATION OBLIGATIONS**

9. Defendant, and each of LeHouillier's and the LeHouillier Firm's officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with them, are permanently enjoined from:

   a. Discriminating on the basis of disability as prohibited by title III of the ADA, 42 U.S.C. §§ 12181 - 12189, and its implementing regulation, 28 C.F.R. pt. 36;

   b. Discriminating against any individual because of that individual's known relationship to or association with an individual with a known disability, as set out in 42 U.S.C. § 12182(b)(1)(E) and 28 C.F.R. § 36.205;

   c. Imposing or applying eligibility criteria that screen out or tend to screen out an individual on the basis of disability from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, as provided by 42 U.S.C. § 12182(b)(2)(A)(i); 28 C.F.R. § 36.301(a);

   d. Failing or refusing to make reasonable modifications in policies, practices, and procedures when necessary to avoid discrimination against persons with disabilities, including persons who use service animals, 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. § 36.302(a), (c); and

   e. Engaging in retaliation, coercion, interference, intimidation, or any other action prohibited by section 503 of the ADA, 42 U.S.C. § 12203 and 28 C.F.R. § 36.206.

## REMEDIAL ACTIONS

10. Within ten days after the date of entry of this Consent Decree and throughout its term, Defendants shall:

    a.  Adopt, implement, maintain, and enforce the policy attached to this Consent Decree as Attachment A (the "Service Animal Policy"), which is incorporated into this Consent Decree by reference;

    b.  Provide a copy of the Service Animal Policy to each of LeHouillier's and the LeHouillier Firm's employees and contractors who have duties that involve work in Defendant's law office, obtain a signed acknowledgment of receipt of the Service Animal Policy obtained from each such person, and maintain such signed acknowledgments of receipt in Defendant's records for the term of this Consent Decree;

    c.  Adopt and implement a policy of providing a copy of the Service Animal Policy to each of LeHouillier's and the LeHouillier Firm's newly hired/retained employees and contractors; obtaining a signed acknowledgment of receipt of the Service Animal Policy from each such employee and contractor within ten (10) days after the individual begins duties that involve work in Defendant's law office, and maintain such signed acknowledgments of receipt in Defendant's records for the term of this Consent Decree;

    d.  Post, maintain, and refresh, as necessary, a sign, printed in dark bold letters, in a font 26 points or larger in size, on a contrasting white background, stating

        "Service Animals Welcome" which shall be conspicuously located in an area of Defendant's law office where it can be easily seen and read by members of the public;

   e.   Maintain in a conspicuous location in the reception area of Defendant's law office, in a place where it can be easily seen and read by members of the public, a copy of the Service Animal Policy, which shall be printed on white paper no smaller than 8 ½" x 11", as attached hereto with 14 point text.  This copy of the Service Animal Policy shall be refreshed as required so it remains easily readable by members of the public.

11.   Within thirty (30) days after the date of entry of this Consent Decree, LeHouillier and the LeHouillier Firm's employees and contractors whose duties involve work in the Defendant's law office shall attend a two hour program of educational training regarding the Defendant's obligations under title III of the ADA and its implementing regulation, 28 C.F.R. pt. 36, including but not limited to the obligations to ensure effective communication with individuals with disabilities; to remove barriers to access when it is readily achievable to do so, to maintain accessible features; and to make reasonable modifications in policies, practices, and procedures as well as Defendant's obligations under this Consent Decree, including the Service Animal Policy.  Such training will include a question and answer period.  Furthermore, throughout the term of this Consent Decree, employees and contractors hired by LeHouillier and the LeHouillier Firm after the above-described initial training session will attend a two hour educational training

program, with content and format as described above, within their first thirty (30) days of work for LeHouillier or the LeHouillier Firm.  All training will be provided at Defendant's expense by an independent third party knowledgeable regarding the requirements of title III of the ADA and approved by the United States.  The person who conducts each training session will provide a written certification stating the date on which training was provided and the name of each person who attended and completed each such training.  Defendant will submit a copy of each such certification to the United States together with its report of actions relating to compliance with the Consent Order.

12. Defendant will immediately notify the United States of each allegation or complaint, whether oral or written, alleging that LeHouillier, the LeHouillier Firm, or any of his, its, or their agents or employees discriminated on the basis of disability against any individual(s) with a disability in violation of title III of the ADA or took any action in violation of section 503 of the ADA, 42 U.S.C. § 12203.  Defendant will send each such notification to the United States by common carrier Federal Express, delivery prepaid, within fifteen (15) days of the date such allegation or complaint is made and shall include, at a minimum, the name, address, and other contact information of the individual(s) who made the allegation or complaint, a summary of the facts involved in the allegation or complaint, all documents within LeHouillier's and/or the LeHouillier Firm's possession, custody, or control relating to the allegation, complaint, or underlying conduct that is claimed to be discriminatory, and a description of any actions that Defendant has taken to address the allegation or complaint.  Throughout the term of this

        Consent Decree, Defendant shall retain records of all such allegations and complaints, including documents relating in any way to the facts and contentions at issue in such allegations and complaints.

13. For the duration of this Consent Decree, in all future advertising in newspapers and telephone directories (excepting entries that contain only name and phone number) and on websites, pamphlets, brochures, and other promotional literature regarding LeHouillier or the LeHouillier Firm, Defendant shall place, in a conspicuous location, a statement that the LeHouillier Firm provides equal access to persons with disabilities as required by the Americans with Disabilities Act.

## RECORD KEEPING AND REPORTING

14. For the term of this Consent Decree, Defendant is required to preserve all records related to this Consent Decree.  Upon reasonable notice to Defendant, representatives of the United States shall be permitted to inspect and copy any records of Defendant or inspect any premises under Defendant's control bearing on compliance with this Consent Decree at any and all reasonable times, provided, however, that the United States shall endeavor to minimize any inconvenience to Defendant from such inspections.

15. Within sixty (60) days after the date of entry of this Consent Decree and, thereafter, on each yearly anniversary of the date of entry of this Consent Decree, Defendant will submit a written report to the United States describing all actions relating to compliance with this Consent Decree.

## MONETARY RELIEF AND CIVIL PENALTY

16. In accordance with Paragraph 18, Defendants shall pay a total of Thirty Thousand Dollars ($30,000) in monetary damages to Joan Murnane and a total of Ten Thousand Dollars ($10,000) in monetary damages to Col. Thomas Rendall. Such payments shall be made by sending certified checks made payable to the order of Joan Murnane and Thomas Rendall in the respective amounts specified herein to counsel for the United States by common carrier Federal Express, delivery prepaid. Before providing the checks to Dr. Murnane and Col. Rendall, the United States will obtain their signatures on a release substantially equivalent to the form attached hereto as Attachment B. The United States will send LeHouillier the release signed by Dr. Murnane and Col. Rendall within ten days after confirming successful negotiation of the final checks by Dr. Murnane and Col. Rendall.

17. In accordance with Paragraph 18, LeHouillier will issue the final four checks or money orders that total Ten Thousand Dollars ($10,000.00) made payable to the order of the United States Treasury as a civil penalty pursuant to 42 U.S.C. § 12188(b)(2)(C) and 28 C.F.R. § 36.504(a)(3). LeHouillier will deliver the checks or money orders to counsel for the United States by common carrier Federal Express, delivery prepaid.

18. Defendants will make payments of twenty-five hundred ($2,500.00) dollars per month for the twenty months commencing April 1, 2010. The United States will instruct Defendants concerning the manner in which these amounts are to be paid.

## MISCELLANEOUS PROVISIONS

19. Failure by the United States to enforce this entire Consent Decree or any of its provisions or deadlines shall not be construed as a waiver of the right of the United States to enforce other deadlines and provisions of this Consent Decree.

20. All materials sent to the United States pursuant to this Consent Decree shall be sent to the following address by common carrier Federal Express, prepaid delivery: Disability Rights Section, Attn: William Lynch, Trial Attorney, Civil Rights Division, U.S. Department of Justice, 1425 New York Avenue, N.W., Washington, D.C. 20005. The cover letter shall include a subject line referencing DJ# 202-13-210.

21. The effective date of this Consent Decree is the date of entry by the Court after the signatures of all Parties have been obtained.

22. This Consent Decree, including Attachments A and B, constitutes the entire agreement between the Parties on the matters raised herein, and no other statement, promise, or agreement, either written or oral, made by either party or agents of either party, that is not contained in this written Consent Decree, will be enforceable under its provisions.

23. This Consent Decree is limited to resolving claims under the ADA related to the facts specifically set forth in Paragraph 2 above and does not purport to remedy any other existing or potential violations of the ADA or any other federal law.

24. This Consent Decree in no way limits Defendants' continuing responsibility to comply with all aspects of the ADA and all other federal laws, including but not limited to the obligations under title III of the ADA to ensure effective communication, remove barriers

        to access when it is readily achievable to do so, and make reasonable modifications in policies, practices, and procedures when necessary to avoid discrimination on the basis of disability.

25. A copy of this Consent Decree and any information contained in it, including the Service Animal Policy, will be made available to any person by Defendant or the United States upon request.

26. This Consent Decree shall be binding on the LeHouillier, the LeHouillier Firm, and his, its, and their successors in interest, assigns, agents, employees, and contractors. Defendant has a duty to notify any and all successors in interest of this Consent Decree and the duties and responsibilities it imposes on LeHouillier and the LeHouillier Firm. In the event LeHouillier or the LeHouillier Firm seeks to transfer or assign all or part of his, its, or their interest in the LeHouillier Firm or Defendant's law office, and the successor or assignee intends on carrying on the same or similar use of the premises, as a condition of sale, Defendant shall obtain the written accession of the successor or assignee to any obligations remaining under this Consent Decree for the remaining term of this Consent Decree.

27. By consenting to entry of this Consent Decree, the United States and Defendant agree that in the event that LeHouillier or the LeHouillier Firm engage in any future violation(s) of the Americans with Disabilities Act, such violation(s) shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 12188(b)(2)(C) and 28 C.F.R. § 36.504(a)(3).

28. This Consent Decree will remain in effect for three (3) years from its effective date. The Court shall retain jurisdiction for the duration of this Consent Decree to enforce the terms of the Consent Decree, at which time the case shall be dismissed with prejudice. The United States may move the Court to extend the duration of the Consent Decree in the interests of justice.

29. The United States and Defendant shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Consent Decree prior to bringing such matters to the Court for resolution. However, in the event of a failure by Defendant to perform in a timely manner any act required by this Consent Decree or otherwise to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorneys' fees which may have been occasioned by the violation or failure to perform. With respect to any failure by LeHouillier or the LeHouillier Firm to comply with any requirement(s) of the ADA, the United States may, in its sole discretion, seek any appropriate relief under the terms of this Consent Decree or file a separate enforcement action seeking relief under the ADA.

30. Any time limits for performance imposed by this Consent Decree may be extended by the mutual written agreement of the United States and the Defendant.

31. Each of the Parties to this litigation will bear his or its own costs and attorney's fees associated with this litigation. The Clerk is directed to close this case subject to reopening or good cause.

DATED this 29th day of March, 2010.

**BY THE COURT:**

*Marcia S. Krieger*
_____

Marcia S. Krieger
United States District Judge

**Signatures indicating agreement to entry of this Consent Decree:**

**For Patric J. LeHouillier and
LeHouillier and Associates PC:**


By: _____s/ Patric LeHouillier_____
Patric J. LeHouillier, Esq.
LeHouillier and Associates PC
90 South Cascade Avenue
Suite 1430
Colorado Springs, Colorado 80903
(719) 471-1330

Dated: _____3 - 10 - 10_____

**For the United States:**

Thomas E. Perez
Assistant Attorney General
Samuel R. Bagenstos
Principal Deputy Assistant Attorney General

Civil Rights Division

John L. Wodatch, Chief
Philip L. Breen, Special Legal Counsel
Jeanine M. Worden, Deputy Chief
Mellie H. Nelson, Supervisory Attorney
Disability Rights Section


_____s/ William F. Lynch_____
William F. Lynch
Trial Attorney
Disability Rights Section (NYA)
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
Telephone: (202) 305-2008 (Lynch)
Fax: (202) 514-7821
E-mail: William.Lynch@usdoj.gov

Dated:  ___3-10-2010_____

**Attachment A**

**POLICY REGARDING SERVICE ANIMALS
FOR PEOPLE WITH DISABILITIES**

Patric J. LeHouillier and LeHouillier and Associates PC are committed to making reasonable modifications in policies, practices, and procedures to permit the use of service animals by persons with disabilities. Service animals play an important role in ensuring the independence of people with disabilities, and it is therefore our policy to welcome into our law office any animal that is individually trained to assist a person with a disability.

**What is a Service Animal?**
Service animals are individually trained to work or perform tasks for individuals with disabilities. Service animals are not always dogs; other animals may assist people with disabilities. Service animals come in all breeds and sizes, may be trained either by an organization or by an individual with a disability, and need not be certified or licensed. Service animals do not always have a harness, a sign, or a symbol indicating that they are service animals. A service animal is <u>not</u> a pet. Service animals assist people with disabilities in many different ways, such as:

- Guiding people who are blind or have low vision and retrieving dropped objects for them;
- Alerting people who are deaf or hard of hearing to sounds and the presence of others;
- Carrying and picking up items, opening doors, or flipping switches for people with disabilities who have limited use of hands or arms, limited use of their legs, or limited ability to bend or stoop;
- Pulling wheelchairs;
- Alerting people with disabilities to the onset of medical conditions such as seizures, protecting them and cushioning them if they fall, reviving them, and performing other tasks that reduce the risk of disability-related injury;
- Doing work or performing tasks for persons with traumatic brain injury, intellectual disabilities, or psychiatric disabilities, such as reminding a person with depression to take medication or waking him up, alerting a person with anxiety to the onset of panic attacks, orienting people with schizophrenia to reality, and helping people with intellectual or cognitive disabilities to locate misplaced items, find places, or follow daily routines; and
- Providing physical support and assisting people with physical disabilities with stability and balance.

**Requirements with Regard to Service Animals:**

Most of the time, people with disabilities who use service animals may be easily identified without any need for questioning. If we can tell by looking, it is our policy not to make an individual feel unwelcome by asking questions. If we are unsure whether an animal meets the definition of a service animal, it is our policy to ask the individual only one question at the point that the individual seeks entry to the office:

- Is your animal a service animal required because of a disability?

If the individual says yes or otherwise explains that the animal is required because of a disability, we will welcome the person and service animal into the office. Once an individual with a service animal has answered this question, we will not ask any further questions about his or her service animal. We will **not** ask an individual questions about his or her disability. We will **not** ask an individual to show a license, certification, or special ID card as proof of their animal's training. We **must** permit service animals to accompany individuals with disabilities to all areas of our office normally used by clients or other members of the public. Treat individuals with service animals with the same courtesy and respect that LeHouillier and Associates affords to all of our clients and to other members of the public who visit our office. Service animals are **not** pets. Do not interfere with the important work performed by a service animal by talking to, petting, or otherwise initiating contact with a service animal.

**Manager Responsibilities:**
In the event that a particular service animal's vicious behavior poses a direct threat to the health or safety of others, LeHouillier and Associates has the right to exclude the animal from our office at that time. Barking alone is not a direct threat. In addition, a direct threat does not exist if the service animal's owner takes prompt, effective action to control the animal. Moreover, we will not exclude a particular service animal based on past experience with other animals or based on fear that is not related to an individual service animal's actual behavior. Each situation will be considered individually. In the event LeHouillier and Associates excludes a service animal because of a direct threat, we will not refuse service to the individual with a disability when he or she is not accompanied by that particular service animal. Only [specify individual(s) by name or position, *e.g. a manager]* can make the decision to exclude a service animal because it poses a direct threat.

Please handle any inquiries or complaints about this policy in accordance with our usual procedures by referring the inquiry or complaint to Patric J. LeHouillier.

## Attachment B

## WAIVER AND RELEASE OF CLAIMS

In consideration of the terms set forth in the Consent Decree entered in Civil Action No. 1:09-cv-02582-MSK-MEH in the U.S. District Court for the District of Colorado, including but not limited to the payment to us of monetary relief as set forth in the Consent Decree, we, Joan Murnane and Thomas Rendall, hereby release Patric J. LeHouillier, LeHouillier and Associates PC, and all of their agents, insurers, employees, and contractors, as well as any affiliated entities, successors, and assigns, without limitation, from any and all legal claims arising from or related to the facts and circumstances described in Paragraph 2 of the Consent Decree. This includes all claims for monetary or equitable relief that we may have under federal, state, or local law based on the facts and circumstances described in Paragraph 2 of the Consent Decree.  We have been advised that, before signing this release, we have the right to consult a private attorney regarding its contents.  We have read this release, understand its contents, and choose to sign it of our own free will and not under duress.

AGREED:

_____          _____
Date                                                            Signature


_____          _____
Date                                                            Signature


(** Signed Waiver and Release of Claims on file with counsel for the United States, and will be delivered to Defendants in accordance with the terms of the Consent Decree. **)